David E. Comstock, ISB No. 2455
John A. Bush, ISB No. 3925
LAW OFFICES OF COMSTOCK & BUSH
199 N. Capitol Blvd., Ste. 500
P.O. Box 2774
Boise, Idaho 83701-2774
Telephone: (208) 344-7700
Facsimile: (208) 344-7721
Email:  decomstock@comstockbush.com

*Attorneys for Plaintiff Dustin Isaac*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

---

| | |
|---|---|
| DUSTIN R. ISAAC,<br><br>                    Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>          10,     Defendant. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**Filing Fee: $400.00** |

Plaintiff Dustin R. Isaac ("Isaac"), individually, through his counsel of record, Law Offices of Comstock & Bush, for his Complaint against Defendant United States of America, states as follows:

### I.
### PARTIES, JURISDICTION AND VENUE

1.     This action is brought against Defendant United States of America under the Federal Tort Claims Act, *28 U.S.C. § 2671, et seq., and 28 U.S.C. §1346(b)(1),* for

---

COMPLAINT AND DEMAND FOR JURY TRIAL - 1

negligence and professional malpractice in connection with medical care provided to Plaintiff Isaac by the U.S. Department of Veterans Affairs at the Boise Veterans' Administration Medical Center.

2.      The claims herein are brought against the Defendant pursuant to the Federal Tort Claims Act, *28 U.S.C. § 2671, et seq., and 28 U.S.C. §1346(b)(1),* for money damages as compensation for personal injuries caused by the Defendant's negligence.

3.      Plaintiff has fully complied with the provisions of *28 U.S.C. §2675* of the Federal Tort Claims Act.

4.      Plaintiff has complied with the statutory notice provisions of the Federal Tort Claims Act, *28 U.S.C. § 1346(b) and 28 U.S.C. §§2671, et seq.*, by timely filing a claim for damages on September 11, 2017. Plaintiff Isaac is now filing this Complaint pursuant to *28 U.S.C. § 2401(b)* after receiving the U.S. Department of Veterans Affairs June 26, 2018 notice of denial of claim.

5.      The Federal Tort Claims Act, by way of the VA Immunity Statute, *38 U.S.C. §7316,* provides the sole remedy for actions arising from alleged medical malpractice by a VA healthcare employee acting within the course and scope of employment with the VA, and provides that proper cause of action is to be made against the United States, not the individual healthcare employee.

6.      At all times relevant hereto Plaintiff Isaac was a U.S. Military Veteran residing in Boise, Ada County, Idaho.

7.      At all times relevant hereto, Defendant United States of America, was a governmental entity, acting through its agency, the U.S. Department of Veterans Affairs, operating the Boise Veterans' Administrative Medical Center located at 500 W. Fort

Street, Boise, Idaho 83702.

8.      Defendant United States of America, including its directors, officers, operators, administrators, employees, agents, contractors and staff at the Boise Veterans' Administrative Medical Center, are hereinafter collectively referred to as "Boise VA Medical Center."

9.      At all times relevant hereto, there was in force and effect, a contractual agreement between Samuel S. Jorgensen, M.D. and U.S. Department of Veterans Affairs, the purpose of which was for Dr. Jorgensen to provide spine surgeon and related healthcare to U.S. Veterans at the Boise VA Medical Center.

10.     At all times relevant to this Complaint, the Boise VA Medical Center held themselves out to the Plaintiff as eligible beneficiaries, as a provider of high quality healthcare services, with the experience necessary to maintain the health and safety of patients like the Plaintiff.

11.     At all times relevant to this Complaint, the directors, officers, operators, administrators, employees, agents, contractors and staff were employed by, contracted by, and/or acting on behalf of the Defendant. Furthermore, Defendant is responsible for the negligent acts of their employees, agents and contractors under *respondeat superior.*

12.     This Court has jurisdiction pursuant to *28 U.S.C. § 1346(b) and 28 U.S.C. §§2671, et seq.*

13.     Venue in this District is proper under *28 U.S.C. § 1402(b)*, in that all, or a substantial part of the acts and omissions forming the basis of these claims occurred in the District of Idaho.

## II.
## FACTUAL ALLEGATIONS

14.     Plaintiff Isaac is a U.S. Military Veteran, who served 13 years as a Staff Sergeant A6 and a CAV Scout for 19 Delta in the US Army. Isaac was first injured in 2010 in a military related incident while serving in Iraq, and lived with beltline pain since that time. After returning home, Isaac reinjured himself while lifting at work in 2012. Normal activities and other work related injuries began to exacerbate his pain levels. Isaac's pain continued and he began to experience occasional numbness and tingling into his lower left extremity. These symptoms made it difficult for him to perform the duties required of his position in the Army and he subsequently presented to the Boise VA Medical Center for treatment. Isaac's workup led to an orthopedic consult, referral to a physiatrist, epidural steroid injections, and eventual neurosurgical consult.

15.     Plaintiff Isaac had an initial spine surgery consult with Dr. Jorgensen on August 13, 2012, who noted pain distribution in the left buttock, posterior thigh and calf, into the left foot, persisting despite conservative measures, modification of activities and medications. Dr. Jorgenson reviewed a March 27, 2012 lumbar spine MRI, and noted the most salient finding was L5-S1 disc desiccation and disc space narrowing, with a small posterior disc protrusion and posterior high-signal intensity zone consistent with annual tear or small disc, primarily central. Dr. Jorgenson presented Plaintiff Isaac with the option to (1) continue observation if symptoms are tolerable; (2) consider microdiscectomy; or (3) lumbar laminectomy, discectomy and fusion. On August 29, 2012, Plaintiff Isaac told Dr. Jorgenson he wanted a second opinion.

16.     Plaintiff Isaac returned to Dr. Jorgensen on September 7, 2012, although was seen by Shannon Gardiner, PA.  PA Gardiner reviewed lumbar plain films and lumbar

spine MRI, noted severe disc space collapse at L5-S1, no evidence of spondylolisthesis or instability, and a central disc protrusion at L5-S1 with an associated annual tear. Again, surgical options of microdiscectomy versus fusion were discussed. Dr. Jorgenson signed-off on the spine surgery consultation. At this time, Plaintiff Isaac elected microdiscectomy, but it was not approved by insurance, so he treated conservatively with physical therapy.

17. Plaintiff Isaac had another lumbar MRI performed through the Boise VA Medical Center on February 10, 2014, finding the L5-S1 disc bulge and extrusion did not cause any spinal canal or lateral recess narrowing, though the neural foramina are widely narrowed bilaterally.

18. In March 2014, Plaintiff Isaac fell off a front-end loader at work which caused immediate numbness and tingling from his left knee down to his foot. He returned to Dr. Jorgensen on March 26, 2014, this time being seen by Sari Lavaries, PA and Scott T. Ward, PA. Plaintiff Isaac's low back pain was noted as severe and worse, with new stabbing pain in his left gluteal area and numbness into the entire left leg. Lumbar spine x-rays showed a decrease in the height space between L5 and S1. PA Lavaries and PA Ward interpreted the March 2012 MRI as showing spondylosis and herniated nucleus pulposus. PA Lavaries and PA Ward did not have the recent lumbar MRI study from the Boise VA Medical Center, and indicated they would reevaluate after review and get another surgery plan together.

19. On April 22, 2014, Plaintiff Isaac had yet another lumbar MRI through the Boise VA Medical Center, showing no acute abnormality and no significant change from the February 10, 2014 MRI. Plaintiff Isaac's imaging continued to show only mild degenerative changes at L4-5 and L5-S1.

20.     Plaintiff Isaac obtained a referral to neurosurgeon Timothy J. Johans, MD, for a second opinion. Dr. Johans saw Dustin on April 24, 2014, looked at his recent MRI study and noted it was nearly normal; there was some disc flattening at L5-S1, but nerve roots were widely open. Dr. Johans felt there was no instability, alignment appeared perfect, and he did not believe surgical fusion would help with his back pain. Dr. Johans recommended a trial of Neurontin, and if that failed, a spinal cord stimulator trial would be reasonable, but direct surgical intervention was not warranted.

21.     Plaintiff Isaac was later evaluated at Saint Alphonsus Medical Group Neurosurgery on November 5, 2014, by Bryan G. Hart, PA. His history was reviewed and it was noted he had continual numbness and tingling in his left lower extremity and constant back pain radiating into his left buttock. Plaintiff Isaac's February 10, 2014 and April 22, 2014 MRI studies were collected and reviewed by neurosurgeon Bruce J. Anderson, MD at SAMG Neurosurgery on November 14, 2014, and he interpreted only mild changes at L4-L5 and L5-S1 level, but no gross anatomical abnormality that would be the direct cause of his symptoms. Dr. Anderson ordered EMGs and nerve conduction velocities; he did not recommend any surgery or fusion based on the radiographic studies.

22.     Plaintiff Isaac's EMGs and nerve conduction velocities performed at Boise VA Medical Center on January 5, 2015, were normal with no electrophysiological evidence of a left lumbosacral radiculopathy, polyneuropathy or myopathy.

23.     On May 22, 2015, Plaintiff Isaac saw Dr. Jorgensen at Boise VA Medical Clinic to again discuss treatment options. Assessment was low back pain, left lumbar radiculopathy, L5-S1 disc degeneration and lumbar spondylosis. At that time, Plaintiff Isaac elected to continue with independent exercises, medication and modified activities.

He was advised to return in two months for reevaluation and further treatment recommendations.

24.     Another lumbar MRI without contrast was performed on May 29, 2015, which found disc heights to be relatively well preserved, but desiccated, with the exception of L5-S1, which had prominent disc height loss. The MRI showed no neural impingement, and the exam was noted to be similar to the 2014 MRI in comparison. Flexion and extension x-ray of the lumbar spine on August 10, 2015 found no evidence of instability.

25.     Plaintiff Isaac returned for follow up with Dr. Jorgensen at Boise VA Medical Center on June 9, 2015, and reported a recent severe exacerbation of symptoms. Dr. Jorgenson once again reviewed the February 10, 2014 MRI, discussed the findings, continued conservative treatment, with a plan to proceed with an L5-S1 fusion surgery.

26.     On August 28, 2015, Plaintiff had a pre-op visit with Dr. Jorgensen at Boise VA Medical Center. Dr. Jorgensen reviewed the May 29, 2015 MRI, assessed severe L5-S1 spondylosis with disc space collapse, end plate Modic changes, posterior osteophytic spurring and facet overgrowth. Dr. Jorgenson recommended L5-S1 laminectomy and posterior lumbar interbody fusion.

27.     On September 11, 2015, Dr. Jorgenson performed a bilateral L5 laminectomy, bilateral L5-S1 foraminotomy, L5-S1 posterior lumbar interbody fusion with titanium-coated PEEK interbody cage and Autograft, L5-S1 posterior lateral fusion with Autograft, L5-S1 pedicle screw instrumentation and use of local morselized bone graft.

28.     Post-operatively, Plaintiff Isaac experienced neuropraxia from a traction injury and placement of the L5 cage. This has not resolved, and numbness in his left leg

has worsened. He experiences nerve pain along the inside of his left foot and lower leg, with severe bouts of lightening pain that radiates from his low back down his left leg. His pain is now constant, and ebbs and flows in intensity.

29.     Nowhere in the medical records of Plaintiff Isaac does there appear to be any justification for the performance of the spinal surgery performed by Dr. Jorgensen. To the contrary, the surgery was unnecessary and unwarranted given Plaintiff Isaac's clinical presentation and the results of the extension flexion studies and the lumbar MRI's. In addition, Dr. Jorgensen failed to properly consent Plaintiff Isaac by notifying him that the surgery was contraindicated by the studies and posed an increased risk of worsening his condition. Had Plaintiff Isaac been properly consented, he would not have authorized Dr. Jorgensen to operate on his spine.

30.     As a direct and proximate result of the performance of the unnecessary and unwarranted spinal surgery, Plaintiff Isaac has suffered permeant nerve damage, his lumbar back pain has been exacerbated, and he has experienced severe and continuing loss of sensation and loss of motor function. Plaintiff Isaac is no longer able to continue in his career with the Army, as his symptoms inhibit his ability to engage in the physical demands of his position, nor can he engage in his previous employment with heavy construction. Plaintiff Isaac has incurred and will continue to incur medical expenses into the future; his life has been negatively impacted in all aspects because of the violations of the applicable standards of healthcare practice related to the performance of the surgical procedure by Dr. Jorgenson; and he has suffered significant permanent bodily injuries, physical and mental pain and suffering, all in an amount to be determined by the jury at trial.

### III.
### FIRST CAUSE OF ACTION
### *(MEDICAL NEGLIGENCE)*

31.     Plaintiff hereby incorporates and realleges each and every preceding paragraph and incorporate the same by reference herein.

32.     At all times relevant hereto, Defendant had a duty to Plaintiff Isaac to act in all respects within the course and scope of his practice as a contract spine surgeon for the VA; a duty to provide ordinary care, and to exercise that standard and degree of care and skill required of healthcare providers, consistent with the expertise that the Defendant presented to the community at large.

33.     Defendant breached its duties of care and was medically negligent, reckless and grossly negligent in the provision or withholding of professional medical services to/from Plaintiff Isaac.

34.     At all times relevant to this Complaint, Defendant had a duty to hire competent operators, administrators, employees, agents, contractors and staff in order to meet its standards of quality of care of its patients, including Plaintiff Isaac. Defendant knew, or should have known, that the medical staff of the facility were not properly trained, and/or supervised, in a manner necessary to provide a level of care for Plaintiff Isaac that met all applicable legal requirements; that demonstrated the standard and degree of care and skill required of competent healthcare providers; and was consistent with the expertise that the Defendant presented to the community at large.

35.     Defendant breached its duty by negligently hiring and/or contracting incompetent, inexperienced and/or unqualified operators, administrators, employees, agents, contractors and staff.

36.     Defendant had a duty to retain only competent and adequately trained operators, administrators, employees, agents, contract surgeons and medical staff in order to meet its standards of quality of care of its patients, including Plaintiff Isaac.

37.     Defendant breached its duty by negligently retaining incompetent, inexperienced, unqualified and/or inadequately trained operators, administrators, employees, agents, contractors and staff.

38.     As a direct and proximate result of Defendant's negligence, Plaintiff Isaac sustained serious and permanent personal physical injuries; he has incurred medical expenses and other damages, and will continue to incur medical expenses and other damages in the future; he was forced to endure pain, suffering and mental anguish, and will continue to endure pain, suffering and mental anguish in the future; he has suffered a loss of enjoyment of life, and will continue to suffer a loss of the enjoyment of life in the future; and he has lost wages, and will continue to lose wage in the future.

39.     The acts and/or omissions set forth above would constitute a claim under the law of the State of Idaho.

40.     The Defendant is liable pursuant to *28 U.S.C. § 1346(b)(1).*

41.     The negligent, careless, reckless and/or unlawful acts and/or omissions of Dr. Jorgensen, while acting within the course and scope of his contractual employment with the Department of Veteran's Affairs and Boise VA Medical Center, which are attributed to Defendant United States of America, were the sole proximate cause of the injuries and damages sustained by Plaintiff Isaac.

## IV.
## LACK OF INFORMED CONSENT

42.     Plaintiff realleges each and every allegation previously stated and

incorporate by reference those allegations as if set forth at length.

43.     Defendant, through its employee, agent or contracted surgeon, failed to properly and accurately diagnose and treat Plaintiff Isaac and either failed to or improperly advised Plaintiff Isaac that surgical intervention was contraindicated given the MRI and plain extension flexion film findings and may worsen his condition.

44.     Defendant, through its employee, agent and/or contracted surgeon, was under a legal duty to provide and disclose to Plaintiff Isaac material facts necessary to allow him to make a reasonable informed decision regarding whether to authorize the spinal surgery performed on September 11, 2015.

45.     Defendant, through its employee, agent and/or contracted surgeon, failed to obtain the informed consent for the surgical procedure performed on Plaintiff Isaac on September 11, 2015, a procedure to which he would not have consented had he been adequately informed that the MRI studies did not indicate surgical intervention, the risks of worsening his condition attendant to the procedure, and the alternatives to surgery.

46.     In failing to obtain informed consent for the procedure, Defendant, acting through its employee, agent and/or contracted surgeon, once again, violated the applicable standard of health care practice in Ada County during August and September 2015.

## V.
## DAMAGES

47.     Plaintiff hereby incorporate and reallege each and every preceding paragraph and incorporate the same by reference herein.

48.     As a result of Defendant's negligent acts and/or omissions complained of herein, Plaintiff is entitled to recover all damages allowed by law, including, but not limited

to:

1.    Past, present and future expenses for the provision of medical care, treatment, therapy, prescriptions and other healthcare services and products in an amount to be proven at trial;

2.    For permanent physical, mental and emotional injuries suffered by Plaintiff Dustin Isaac in the past, and for those damages he will suffer in the future in an amount to be proven at trial;

3.    For past and future loss of earning capacity, income and/or expense associated with Defendant's violations of the applicable standards of health care practice; in an amount to be proven at trial; and

4.    For loss of ability for enjoyment of life and diminution of activities of daily living in an amount to be proven at trial.

5.    Attorneys' fees and costs incurred herein; and

6.    For such other and further relief as this Court deems just and equitable.

## VI.
## REQUEST FOR ATTORNEYS' FEES AND COSTS

As a direct and proximate result of the aforementioned negligent acts and/or omissions of Defendant, Plaintiff has been compelled to retain attorneys to represent him in this action.  Pursuant to *28 U.S.C. § 2678 and Rule 54(d)(1) of the Federal Rule of Civil Procedure*, Plaintiff respectfully requests that he be awarded reasonable attorneys' fees and costs incurred herein.

## VII.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dustin Isaac prays that judgment be entered in his favor and against Defendant as follows:

1.    For past, present and future expenses for the provision of medical care, treatment, therapy, prescriptions and other healthcare services and products, in an amount to be proven at trial;

2.      For an award of damages representing the physical, mental and emotional injuries, pain and suffering, permanent physical disability and loss of ability to enjoy life, suffered by Plaintiff Dustin Isaac in the past, present, and those injuries he will continue to suffer in the future, in an amount to be proven at trial;

3.      For an award of damages representing the past and future loss of earning capacity, loss of income and/or expenses to Plaintiff Dustin Isaac, in an amount to be proven at trial;

4.      For reasonable attorneys' fees and costs of suit; and

5.      For such other and further relief as this Court deems just and equitable given the circumstances of the case.

RESPECTFULLY SUBMITTED this 24th day of December, 2018.

COMSTOCK AND BUSH

/s/ David E. Comstock
_____
David E. Comstock, Of the Firm
Attorneys for Plaintiff